IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3200-D

| | | |
|---|---|---|
| DARYL HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HARLEY LAPPIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On December 18, 2009, Daryl Harper ("Harper" or "plaintiff"), a former federal inmate previously incarcerated at the Federal Medical Center in Butner, North Carolina ("FMC-Butner" or "Butner"), filed this pro se action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) [D.E. 1]. On April 26, 2010, the court reviewed the allegations of the particularized complaint pursuant to 28 U.S.C. § 1915 and allowed the action to proceed [D.E. 7]. Harper sues Harley Lappin, the Director of the Federal Bureau of Prisons ("BOP"); Butner Warden Tracy W. Johns; Butner Camp Administrator Virginia K. Harris; Butner Camp Counselor Armeithia Forte; and BOP Chief of Health Programs Jeff Allen. Harper complains that defendants acted with deliberate indifference to his serious medical needs and failed to provide adequate medical care during his incarceration at Butner.

On July 16, 2010, defendants filed a motion to dismiss or, in the alternative, for summary judgment [D.E. 14]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Harper about the motion to dismiss or for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 17]. On August 6, 2010, Harper responded in opposition [D.E. 19]. For the reasons explained below, the court grants in part and denies in part defendants' motion to dismiss.

I.

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

Harper suffers from multiple sclerosis (MS). Am. Compl. ¶ 11. In 2008, Harper was incarcerated at the Federal Penitentiary Center in Marion, Illinois, and was receiving treatment for his MS from a local neurologist ("Guyton") with a medication called Copaxone. Id. "Guyton approved the plaintiff to receive the therapy, Tysabri" rather than Copaxone. Id. BOP transferred Harper to FMC-Butner, "one of three sites in North Carolina that administers Tysabri." Id.; see also Mem. Opp'n Mot. Dismiss, Ex. B (July 31, 2009 treatment note indicating that Harper was transferred to Butner "due to us having an infusion center").

In February 2009, "[f]ollowing doctor's orders, [Harper] ceased his daily injections of Copaxone, had several radiology and lab tests, and was approved [by his treating neurologist at Butner] to receive Tysabri." Am. Compl. ¶ 11; see also Mem. Opp'n Mot. Dismiss, Ex. F (Feb. 10,

2

2009 treatment note). Harper was receiving treatment with Baclofen, which "is not a treatment for multiple sclerosis . . . [but] is used as a muscle relaxer in the plaintiff's case to relieve spasticity, a symptom of multiple sclerosis." Am. Compl. ¶ 11; see also Mem. Opp'n Mot. Dismiss, Ex. H (Sept. 22, 2009 treatment note indicating use of "baclofen for [Harper's] spasticity"). In August 2009, BOP's Central Office (headed by defendant Allen) denied approval for treating Harper with Tysabri. Am. Compl. ¶ 11; see also Mem. Opp'n Mot. Dismiss, Ex. N (administrative remedy response). The Central Office disapproved treatment with Tysabri because Harper "wanted to use Tysabri by preference not because [treatment with Copaxone] was not working" and recommended that Harper be treated with a medication similar to Copaxone. Mem. Opp'n Mot. Dismiss, Ex. E (Aug. 14, 2009 medical note). In response to the decision, Harper's neurologist stated that Harper "was experiencing a slowly progressive clinical deterioration for which Tysabri is perfectly indicated . . . particularly when [the medications recommended by the Central Office] have failed to benefit or to stop the disease" in Harper, and again requested treatment with Tysabri. Mem. Opp'n Mot. Dismiss, Ex. H (Sept. 22, 2009 treatment note). Because Harper had stopped taking Copaxone in preparation for treatment with Tysabri, he received no treatment for his MS for several months. Am. Compl. ¶ 11; see also Mem. Opp'n Mot. Dismiss, Ex. H (Sept. 22, 2009 treatment note indicating that Harper "has been off medication for the past six to seven months, waiting for the Tysabri to be approved").

To state a claim for inadequate medical care in violation of the Eighth Amendment, an incarcerated prisoner must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). In order to prove such a claim, Harper "must demonstrate that the officers acted with 'deliberate indifference'

3

(subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

## II.

Defendants Lappin and Johns seek dismissal on the basis that plaintiff improperly attempts to assert Bivens claims against them in their supervisory capacities. Mem. Supp. Mot. Dismiss 3–4. A civil rights action brought under Bivens may not be grounded upon a respondeat superior theory. See, e.g., Iqbal, 129 S. Ct. at 1948; Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor may be held responsible for a subordinate's unconstitutional act only if he was involved personally or participated in the unconstitutional act. See, e.g., Rizzo v. Goode, 423 U.S. 362, 376–77 (1976). Thus, a plaintiff must show that (1) the supervisor "had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was "an affirmative causal link" between the inaction and plaintiff's alleged constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted) (discussing 42 U.S.C. § 1983).

Harper contends that Johns and Lappin are liable because they became personally aware of the failure to provide Harper with medical treatment through grievances. Mem. Opp'n Mot. Dismiss 7–8. "However, participation in the administrative remedy proceedings is not the type of

4

personal involvement necessary to state a claim based upon supervisor liability." <u>Abdel-Aziz v.</u>
<u>Johns</u>, No. 5:07-CT-3095-FL, 2008 WL 4279696, at *3 (E.D.N.C. Sept. 15, 2008) (unpublished)
(citing <u>Page v. Kupec</u>, No. Civ. A. AW-02-3430, 2003 WL 23274357, at *1 (D. Md. Mar. 31, 2003)
(unpublished), <u>aff'd</u>, 70 F. App'x 147 (4th Cir. July 31, 2003) (per curiam) (unpublished); <u>Bonds</u>
<u>v. Fox</u>, No. 1:08CV78, 2008 WL 2543371, at *3 n.3 (N.D. W. Va. June 23, 2008) (unpublished)).
Thus, the court dismisses defendants Lappin and Johns.

Defendants Allen, Harris, and Forte seek dismissal because "[t]here are no allegations of
any actual treatment or personal interaction between the plaintiff and any of these defendants."
Mem. Supp. Mot. Dismiss 6–7. As for defendants Harris and Forte, Harper relies on their response
to a grievance he filed concerning his medical care. Mem. Opp'n Mot. Dismiss, Ex. M. As with
defendants Lappin and Johns, Harris and Forte's participation in the grievance process does not
suffice to state a <u>Bivens</u> claim for inadequate medical care based on supervisory or personal liability.
Thus, the court dismisses defendants Harris and Forte.

As for defendant Allen, Harper has alleged that Allen denied approval of treatment with
Tysabri, despite the repeated recommendations of Harper's treating physicians. Mem. Opp'n Mot.
Dismiss 3. Allen seeks qualified immunity on the ground that "the prescribing of Baclofen rather
than Tysabri . . . fails to show . . . [a] violat[ion] of plaintiff's constitutional rights." Mem. Supp.
Mot. Dismiss 7.

Qualified immunity is "'an immunity from suit rather than a mere defense to liability[; and
like an absolute immunity,] it is effectively lost if a case is erroneously permitted to go to trial.'"
<u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526
(1985)). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability

5

but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992). The Fourth Circuit cautions that "[t]his does not mean, however, that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment." Id. Defendant officials have the burden of pleading and proving qualified immunity. See, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 332 n.10 (4th Cir. 2009); Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 129 S. Ct. at 818; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009); Miller v. Prince George's County, 475 F.3d 621, 626–27 (4th Cir. 2007). First, "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." Pearson, 129 S. Ct. at 815–16. Second, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. Courts have discretion to decide which of the two prongs should be addressed first. Id. at 818. Thus, defendants are entitled to summary judgment on qualified immunity grounds if the answer to either question is "no." See, e.g., Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

In considering Allen's motion to dismiss, the record is insufficient to conclude that Allen is entitled to qualified immunity on the first prong of the analysis. Harper has adequately pled both a serious medical condition and a refusal to approve medication to treat the serious medical condition, in direct contravention of the repeated recommendations of Harper's treating physicians. Thus, the court denies Allen's motion to dismiss. On a more fully developed record, the court will entertain a motion for summary judgment.

6

III.

As explained above, the court GRANTS defendants' motion to dismiss [D.E. 14] in part.

Plaintiff's claims against defendants Lappin, Johns, Harris, and Forte are DISMISSED. To the

extent Allen seeks dismissal, the court DENIES the motion [D.E. 14]. The clerk is DIRECTED to

issue a scheduling order.

SO ORDERED. This _4_ day of February 2011.

JAMES C. DEVER III
United States District Judge

7