IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3200-D

| | | |
|---|---|---|
| DARYL HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HARLEY LAPPIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On December 18, 2009, Daryl Harper ("Harper" or "plaintiff"), a former federal inmate previously incarcerated at the Federal Medical Center in Butner, North Carolina ("FMC-Butner" or "Butner"), filed this pro se action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that defendants acted with deliberate indifference to his serious medical needs and failed to provide adequate medical care during his incarceration at Butner. [D.E. 1]. On April 26, 2010, the court reviewed the allegations of the particularized complaint pursuant to 28 U.S.C. § 1915 and allowed the action to proceed [D.E. 7]. On February 4, 2011, the court granted in part and denied in part defendants' motion to dismiss [D.E. 14], and dismissed several defendants [D.E. 20]. The sole remaining defendant is Dr. Jeff Allen, the Chief of Health Programs for the Bureau of Prisons ("BOP").

On February 10, 2011, Magistrate Judge Webb entered a scheduling order [D.E. 21]. On March 3, 2011, Harper filed a motion for appointment of counsel [D.E. 22]. On April 4, 2011, Dr. Allen filed a motion for summary judgment [D.E. 24], and submitted the declaration of Lynnell Cox, a paralegal specialist employed by the BOP at Butner [D.E. 25], Ex. 1 ("Cox Decl.") ¶ 1. Pursuant

to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Harper about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 26]. On April 25, 2011, Harper responded in opposition to the motion for summary judgment [D.E. 27], submitting several exhibits in opposition to the motion and asking the court to also consider the exhibits he previously submitted in opposition to the motion to dismiss. As explained below, plaintiff's motion to appoint counsel is denied, and defendant's motion for summary judgment is granted.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

2

In the light most favorable to plaintiff, the facts are as follows. Harper suffers from multiple sclerosis (MS). Am. Compl. [D.E. 6] ¶ 11. In 2007 and 2008, Harper was incarcerated at the Federal Penitentiary Center in Marion, Illinois ("Marion"), and was receiving treatment for his MS from a local neurologist Dr. Guyton with a medication called Copaxone.[1] Id. It appears that Harper began to look into treatment options for his MS, and discussed with Dr. Guyton the possibility of treatment with a medication called Tysabri.[2] Mem. Opp'n Mot. Summ. J. [D.E. 27], Exs. O–P (May 2, 2007, and June 29, 2007, medical notes by Dr. Guyton indicating that Harper asked Dr. Guyton about Tysabri and that Dr. Guyton did not recommend treating Harper with Tysabri). Dr. Guyton initially did not recommend treatment with Tysabri, but ultimately "approved the plaintiff to receive . . . Tysabri" in June 2008, and submitted paperwork to the pharmaceutical company that makes Tysabri in order to begin Harper's treatment. Am. Compl. ¶ 11; see also Cox Decl., Att. 7 1 (September 9, 2008, medical note by Dr. Guyton stating, "Reco Tysabri – pt request" (emphasis removed));[3] Mem. Opp'n Mot. Summ. J., Exs. J (enrollment letter from pharmaceutical company indicating that Dr. Guyton had submitted paperwork for Harper's treatment with Tysabri), O–P. On July 23, 2008, the attending physician at Marion submitted a request to BOP to transfer Harper "to

---

[1] The generic name for Copaxone is glatiramer. See Nat'l Insts. of Health, U.S. Nat'l Library of Med., http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000225/ (last visited Nov. 11, 2011).

[2] The generic name for Tysabri is natalizumab. Mem. Opp'n Mot. Summ. J., Ex. J (letter from pharmaceutical company to plaintiff).

[3] The medical records are ambiguous concerning the extent of Dr. Guyton's recommendation that Harper receive Tysabri. On December 17, 2008, Harper's chronic care physician at Butner ("Dr. Serrano-Mercado") indicated that Dr. Guyton "did not recommend for [Harper] to start Tysabri. She wanted [Harper] to continue Copaxone." Cox Decl., Att. 7 2. However, in requesting that BOP approv Tysabri for Harper, Dr. Serrano-Mercado later indicated that "another neurologist in [Harper's] prior inst[itution] also recommended [Tysabri] and he was recommended to be transferred here due to the infusion center." Cox Decl., Att. 4.

3

approved center to receive" Tysabri. Mem. Opp'n Mot. Summ. J., Ex. K (July 23, 2008, administrative note). In November 2008, BOP transferred Harper to FMC-Butner for further treatment for his MS. Mem. Supp. Mot. Summ. J. [D.E. 25] 1; Mem. Opp'n Mot. Summ. J. 1, 5.

In February 2009, Harper's treating neurologist at Butner Dr. Williams discontinued his treatment with Copaxone and ordered several radiology and lab tests "prior to initiation of [T]ysabri . . . ." Mem. Opp'n Mot. Dismiss [D.E. 19], Ex. G (treatment note); see also Mem. Opp'n Mot. Summ. J., Ex. F (treatment note). On July 14, 2009, Dr. Williams evaluated Harper and noted in pertinent part as follows:

> The patient is a 54[-year-old] individual . . . [with a] 15[-year] history of multiple sclerosis, diagnosed only about seven years ago, during which time he has been taking Copaxone up until February 2009. The patient returns to the clinic because he has been off the Copaxone and he is interested to initiate Tysabri. The patient is well educated and has been extensively informed about the potential benefits and side effects of these treatment options including the [risk of] PML[4] . . . with the use of Tysabri. In his opinion the patient has chosen to initiate this treatment versus any other option to treat his multiple sclerosis because he wishes to maximize his ability to improve his baseline neurological function.

Mem. Opp'n Mot. Dismiss, Ex. A (July 14, 2009, treatment note) (emphasis added). On July 31, 2009, Dr. Serrano-Mercado reviewed Harper's medical chart and submitted a request to BOP's Central Office for approval of Tysabri:

> Inmate was evaluated by neurologist in house recommending use of Tysabri due to fail[ure] of current therapy. Reviewing his NF list it appears that another neurologist in his prior inst[itution] also recommended same treatment and he was recommended to be transferred here due to the infusion center. Please approve, thanks

Cox Decl., Att. 4 (BOP Non-Formulary Drug Authorization Form) (emphasis added). On August 6, 2009, Dr. Allen denied the request, stating that

> [a] review of available records indicates that Tysabri is being requested because of

---

[4] PML appears to be an abbreviation for progressive multifocal leukoencephalopathy.

4

> patient preference. Records suggest that the inmate discontinued glatiramer with the goal of starting Tysabri. As noted above, natalizumab has been associated with progressive multifocal leukoencephalopathy and is available only through restricted distribution. Review articles by experts on this subject recommend glatiramer or interferon beta prior to using Tysabri.

Id.

On August 14, 2009, Dr. Serrano-Mercado sent Harper back to Dr. Williams for re-evaluation in light of Dr. Allen's denial, noting that Dr. Allen denied the request because Harper "stopped using his prior medication because he wanted to use Tysabri by preference not because [Copaxone] was not working." Mem. Opp'n Mot. Dismiss, Ex. E (August 14, 2009, administrative note). Dr. Williams saw Harper on September 22, 2009, and stated,

> [i]t appears that . . . Tysabri was approved, but stopped by the CEO because the patient [discontinued] his prior medication because he wanted to use Tysabri, by preference, not because [Copaxone] was not working.
>
> The reality is that the patient was experiencing a slowly progressive clinical deterioration for which Tysabri is perfectly indicated in a chronic progressive type of multiple sclerosis[,] particularly when [the medications recommended by the Central Office] have failed to benefit or to stop the disease . . . .
>
> * * * *
>
> In conclusion I have a 54-year-old MS patient who does have the clinical features of a slowly progressive clinical deterioration, despite the fact that he has used disease-modifying medication and who wishes to use Tysabri, not only because of his own wish, but to try to stabilize his condition and prevent further clinical deterioration. I will recommend the patient be placed on that medication as an option to treat his multiple sclerosis.

Mem. Opp'n Mot. Summ. J., Ex. H (September 22, 2009, medical note). On October 5, 2009, Dr. Serrano-Mercado again ask BOP's Central Office to treat Harper with Tysabri, and included Dr. Williams's response. See Cox Decl., Att. 5 (BOP Non-Formulary Drug Authorization Form). On October 8, 2009, Dr. Allen again denied the request, stating,

> [t]he medical literature clearly states that natalizumab should be reserved for use in the treatment of relapsing-remitting disease pattern only when both glatiramer and interferons have failed due to a risk of progressive multifocal leukoencephalopathy.

5

> It's [sic] effectiveness in the treatment of progressive disease is unknown. Although there is evidence that glatiramer failed, there is no indication that interferon has been tried.

Id.

On December 23, 2009, another Butner neurologist Dr. Tesfaye examined Harper and "expressed to him that at this time[,] Copaxone, Glatiramer Acetate, or interferons are not indicated for progressive MS" and that "unless he has a clear relapsing remitting pattern Tysabri can not [sic] be prescribed to him." Cox Decl., Att. 6 1 (December 23, 2009, medical note). Accordingly, Dr. Tesfaye started treating Harper with a medication called IVIG. Id. Harper began treatment with IVIG on February 22, 2010. See Cox Decl., Att. 6 4 (medication chart).

II.

To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety...." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[O]bduracy and wantonness, not inadvertence or error in good faith, ... characterize the conduct prohibited by the Cruel and Unusual Punishments Clause ...." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "[T]o establish a claim of deliberate

6

indifference to [a] medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Dr. Allen contends that Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. 2008) (per curiam) (unpublished), is "analogous" to this case. Mem. Supp. Mot. Summ. J. 5. Webb had a hernia that could be repaired by "elective" surgery, but the surgery was not "urgent" and the inmate was never scheduled for surgery. Webb, 281 F. App'x at 163–64. Instead, the inmate was treated with other measures, including a back brace, a hernia belt, and pain medication. Id. The Fourth Circuit affirmed summary judgment for the defendant prison officials because the plaintiff had failed to "establish that the delay in his surgery caused him substantial harm . . . ." Id. at 167. The record before the Fourth Circuit included the inmate's entire medical record, as well as an affidavit from his treating physician regarding the propriety of his course of treatment. See id. at 163–64. As in Webb, Harper has failed to provide any evidence, such as an affidavit from a medical professional, to indicate that a delay in providing treatment for Harper's MS caused Harper any significant harm.

The Eighth Amendment may be violated when, without explanation, an administrator charged with reviewing and approving requested medical treatment refuses to approve the treatment that the prisoner's treating physician or specialist requests. See Arnett v. Webster, No. 09-3280, 2011 WL 4014343, at *8–9 (7th Cir. Sept. 12, 2011); Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005). Here, the evidence taken in the light most favorable to Harper shows that there is no genuine issue of material fact as to whether Dr. Allen was deliberately indifferent to Harper's serious medical needs. Rather, the record reflects a disagreement between medical professionals on the appropriate course of treatment. Such a disagreement does not reflect deliberate indifference. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); Wright v. Collins, 766 F.2d 841, 849 (4th Cir.

7

1985); Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977). Likewise, even if Dr. Allen was negligent, mere negligence does not state an Eighth Amendment claim. See, e.g., Estelle v. Gamble, 429 U.S. 97, 105–06 (1976); Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986).

Alternatively, Dr. Allen asserts the defense of qualified immunity. See Mem. Supp. Mot. Summ. J. 2–5. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Brandon v. Holt, 469 U.S. 464, 472–73 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Pearson v. Callahan, 555 U.S. 223, 231–32 (2009).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 555 U.S. at 232; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir.), cert. denied, 131 S. Ct. 392 (2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009), cert. denied, 130 S. Ct. 1137 (2010); Miller v. Prince George's County, Md., 475 F.3d 621, 626–27 (4th Cir. 2007). First, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (quotations omitted) (alterations in original). The United States Supreme Court does "not require a case directly on point, but existing precedent must

have placed the statutory or constitutional question beyond debate." Id. Courts have discretion to decide which prong to address first. Pearson, 555 U.S. at 236. Thus, defendants are entitled to summary judgment on qualified immunity grounds if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

The evidence, viewed in the light most favorable to Harper, does not establish a violation of the Eighth Amendment. Accordingly, Dr. Allen is entitled to qualified immunity.

Finally, the court addresses Harper's motion for appointment of counsel. No right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989); see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. Exceptional circumstances do not exist. Thus, the motion for appointment of counsel is denied.

III.

As explained above, the court GRANTS defendant's motion for summary judgment [D.E. 24], and DENIES plaintiff's motion for appointment of counsel [D.E. 22]. The clerk shall close the case.

SO ORDERED. This 14 day of November 2011.

JAMES C. DEVER III
Chief United States District Judge

9